**O**

# United States District Court
# Central District of California

| | |
|---|---|
| AFROGHINI LLC SOUTH CAROLINA et al.,<br>Plaintiffs,<br>v.<br>ROB BONTA et al.,<br>Defendants. | Case № 2:26-cv-11040-ODW (AJRx)<br><br>**ORDER GRANTING UNOPPOSED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [7]** |

## I. INTRODUCTION

Plaintiffs Afroghini LLC (South Carolina) and Afroghini LLC (Georgia) (collectively, "Afroghini") apply ex parte for a temporary restraining order, asking the Court to restrain Defendants Shopify Inc. and Shopify (USA) Inc. (collectively, "Shopify") from producing documents responsive to certain portions of Defendant Attorney General of California Rob Bonta's ("Attorney General") August 28, 2026 Investigative Subpoena. (Ex Parte Appl. ("TRO"), Dkt. No. 7.) Shopify takes no position on the merits of the matter. (Resp., Dkt. No. 16.) The Attorney General failed to respond. For the following reasons, the Court **GRANTS** the Application.

## II. BACKGROUND

Afroghini consists of two non-California companies that operate e-commerce stores on Shopify's platform and primarily sell nicotine products. (Compl. ¶¶ 8, 12, Dkt. No. 1.) The two Afroghinis collectively own and operate twelve online retail stores on Shopify. (Decl. Mohammad Zafar ISO TRO ("Zafar Decl.") ¶ 2, Dkt. No. 10.) Whenever a customer buys a product on an Afroghini website, Shopify generates and retains a record linking the customer, her billing and shipping address, telephone number, email address, and payment method to the product purchase and price paid. (Compl. ¶ 12.) Shopify also retains Afroghini's bank account, payout history, revenue figures, and tax documents. (*Id.* ¶ 13.)

On August 28, 2026, the Attorney General served an investigative subpoena on Shopify in a matter captioned *In the Matter of the Investigation of: Internet Sales of ENDS Products* (the "Subpoena").[1] (Zafar Decl. Ex. B ("Subpoena"), Dkt. No. 10-2.) The Attorney General did not notify Afroghini or Afroghini's customers of the Subpoena. (Compl. ¶ 18.) The Subpoena contains sixty requests for production ("RFPs"), five for each of Afroghini's websites. (Zafar Decl. ¶ 4.) The Subpoena repeats the following five RFPs for each Afroghini website:

1. All Merchant Information[2] Relating To [Afroghini Website]. ("RFP 1")
2. All Store Information[3] Relating To [Afroghini Website]. ("RFP 2")

---

[1] ENDS stands for Electronic Nicotine Delivery Systems. *E-Cigarettes, Vapes, and other Electronic Nicotine Delivery Systems (ENDS)*, FDA (Aug. 17, 2026), https://www.fda.gov/tobacco-products/products-ingredients-components/e-cigarettes-vapes-and-other-electronic-nicotine-delivery-systems-ends.

[2] The Subpoena defines Merchant Information to include each merchant's "name, full address, telephone number, email address, IP addresses, and any staff members on its account. (Subpoena 5.)

[3] The Subpoena defines Store Information to include "store revenues, countries and states into which a store has sold, invoices for Shopify services rendered, method of payment for Shopify services, connected bank account(s), product lists, store transactions, payout information, tax documents, contracts between the store and Shopify, and apps installed on a store." (Subpoena 5.)

3. All Documents and Communications Relating To each Sale by [Afroghini Website] to any Customer in California, including order or invoice number, Customer full name, order or invoice date, Customer complete billing address, Customer complete shipping address, Customer telephone number, payment method, description of products, quantity of products, product price, taxes, shipping fees or charges, shipping method, and total price. ("RFP 3")

4. All Documents and Communications from Shopify to [Afroghini].

5. All Documents and Communications to Shopify from [Afroghini].[4]

(Subpoena 9.) Afroghini challenges the first three RFPs ("Challenged RFPs") as overbroad and unconstitutional. (TRO 7.)

On the evening of September 21, 2026, Shopify notified Afroghini of the Subpoena and that it intended on complying with the Subpoena on September 25, 2026. (Zafar Decl. ¶ 4.) Afroghini immediately responded that it would seek a court order to block Shopify's production. (Zafar Decl. Ex. C ("Shopify Correspondence") 12, Dkt. No. 10-3.)[5] Shopify responded the following day that it would proceed with production unless Afroghini produced a court order before September 25, 2026. (*Id.* at 14.)

On September 23, 2026, Afroghini retained legal counsel. (Decl. William B. DeClercq ISO TRO ("DeClercq Decl.") ¶ 2, Dkt. No. 13.) Later that day, Afroghini's counsel requested to meet and confer with the Attorney General via voicemail and email. (*Id.* ¶ 4.) The next morning, on September 24, 2026, Afroghini's counsel sent meet and confer letter via facsimile and email to the Attorney General. (*Id.*) In the letter, Afroghini's counsel notified the Attorney General of Afroghini's intent to seek emergency relief unless the Attorney General agreed to a standstill of Shopify's imminent production. (*Id.*, Ex. F ("Letter") 2, Dkt. No. 13-2.) No one from the

[4] Neither the fourth nor the fifth type of RFP are at issue in this Order. (TRO 7.)

[5] When citing to the Shopify Correspondence, the Court cites to the CM/ECF pagination.

Attorney General's office responded. (DeClercq Decl. ¶ 6.) Afroghini now asks the Court for emergency relief, seeking to block Shopify's production of documents responsive to the Challenged Requests until the Court has had occasion to review the scope of the Challenged Requests. (TRO 5.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (citation modified).

## IV. DISCUSSION

For the following reasons, the Court finds Afroghini is entitled to a temporary restraining order.

**A. Likelihood of Success on the Merits**

Afroghini advances several arguments regarding likelihood of success on the merits, including that RFPs 1 and 2 are overbroad and that RFP 3 is unconstitutional under the California constitution. (TRO 12–13.)

*1. Overbreadth*

Afroghini argues that RFPs 1 and 2 are overbroad. (*Id.* at 12.) The Attorney General's power to issue an investigative subpoena is akin "to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Brovelli v. Superior Ct.*, 56 Cal. 2d 524, 529 (1961) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)). Investigative subpoenas "are valid if: (1) they inquire into matters the agency is authorized to investigate; (2) they are 'not too definite'; and (3) the information sought is 'reasonably relevant' to the investigation." *State Water Res. Control Bd. v. Baldwin & Sons, Inc.*, 45 Cal. App. 5th 40, 55 (2020) (citing *Brovelli*, 56 Cal. 2d at 529)). Afroghini does not dispute that the Attorney General has the authority to investigate nicotine products, but challenges on relevance grounds. (TRO 12.)

"For purposes of administrative subpoenas, the relevance standard is construed broadly." *State Water*, 35 Cal. App. 5th at 57. However, despite the liberal standard, there are limits to relevance: the documents requested "to be produced [must be] adequate, but not excessive, for the purposes of the relevant inquiry." *Craig v. Bulmash*, 49 Cal. 3d 475, 482 (1989) (en banc) (citing *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946)); *Okla. Press Pub.*, 327 U.S. at 209 ("[T]his cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.").

This would generally be where the Court summarizes the Attorney General's position on why the Challenged Requests are relevant to his investigation. However,

the Court is without the benefit of his briefing, and thus can only assume that the investigation has some nexus to the internet sale of nicotine products. To the extent that the investigation is related to the internet sale of nicotine products, the Court has no doubt that the Attorney General would otherwise be entitled to investigate Afroghini's nicotine product sales in California.

However, the Court has very serious doubts whether the Attorney General is entitled to information regarding Afroghini's nicotine product sales in other "states," and even other "countries," as the Subpoena requests. (Subpoena 5.) The Attorney General's authority is limited to "see[ing] that the laws of the State [of California] are uniformly and adequately enforced." Cal. Const. art. V § 13. And California recognizes a presumption against extraterritoriality: "Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). Thus, it is unclear to the Court why the Attorney General would be entitled to information about transactions occurring outside California's borders, when its remit is clearly limited to enforcing California laws and protecting California citizens' rights.

For these reasons, at this juncture, the Court finds that Afroghini has raised at least serious questions regarding the overbreadth of RFPs 1 and 2.

*2. Constitutionality*

Afroghini argues that RFP 3 fails the privacy balancing test required by the California constitution. Vendors have standing to assert constitutional privacy challenges on behalf of their customers. *See Craig v. Boren*, 429 U.S. 190, 196 (1976) ("[A vendor] is entitled to assert those concomitant rights of third parties that would be diluted or adversely affected should [its] constitutional challenge fail . . . ."). In *Hill v. National Collegiate Athletic Association*, the California Supreme Court established a framework for analyzing constitutional invasion of privacy claims.

7 Cal. 4th 1, 35–37 (1994). Actionable claims require (1) a legally protected privacy interest; (2) objectively reasonable expectation of privacy; and (3) a serious invasion of privacy in both nature and scope. *Id.* If all three elements are met, courts must balance the strength of the privacy interest against countervailing interests. *Id.* at 37–38.

The Court finds that Afroghini has raised serious questions regarding whether RFP 3 passes muster under the *Hill* framework. First, RFP 3 likely implicates a "legally protected privacy interest." *Hill*, 7 Cal. 4th at 35. California courts have found that individuals "have a substantial interest in the privacy of their home," and that accordingly, "home contact information is generally considered private." *County of Los Angeles v. L.A. Cnty. Emp. Relations Comm.*, 56 Cal. 4th 905, 927 (2013). Here, RFP 3 requests the same home contact information that the California Supreme Court held implicated a legally protected privacy interest in *County of Los Angeles*. (*See* Subpoena 9 (requesting customers' billing address, shipping address, and telephone number).)

Second, RFP 3 may infringe on Afroghini's customers' objectively reasonable expectation of privacy. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37. Afroghini does not point the Court to any case where a California court found an objectively reasonable expectation of privacy based on similar facts. However, the Court is satisfied that, at this juncture, Afroghini has raised at least serious question whether a customer reasonably expects that a vendor will not hand over his or her home address, telephone number, payment method, and product purchase history to the government.

Third, RFP 3 may also represent a serious invasion of privacy. "Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part." *Id.* However, this is no "ordinary incident of community life": it is a request

from the State to hand over customer information that the customer was unaware and had no reason to expect would end up in the State's hands. Afroghini has raised at least serious questions about whether this request represents a serious invasion of privacy.

Finally, the Court must balance these privacy concerns "against other important interests." *Id.* However, as the Attorney General did not respond to the Court's order to file a responding brief, no defense has been raised, and thus, Afroghini cannot "undertake the burden of demonstrating the availability and use of protective measures, safeguards, and alternatives to [the Attorney General's] conduct that would minimize the intrusion on privacy interests." *Id.* at 38. This is not for lack of trying: Afroghini does propose four measures that it believes would balance the Attorney General's investigative needs with Afroghini's customers' privacy interests. However, without the benefit of the Attorney General's position, the Court does not express a view on the merits of these interests and finds only that Afroghini has raised serious questions about whether RFP 3 is constitutional.

As Afroghini demonstrates serious questions as to the merits of each of the Challenged Requests, the Court finds that the first *Winter* factor weighs in favor of Afroghini.

**B. Likelihood of Irreparable Harm**

Afroghini argues that it is faced with irreparable harm without a court order because Shopify will produce its information and its customer information to the Attorney General. (TRO 14–15.) Indeed, Shopify has unequivocally indicated that it will release customer information responsive to the Challenged Requests, which the Court has found may implicate serious privacy concerns. (Shopify Correspondence 14.) Once Shopify releases that information, there is no un-ringing that bell. *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again.") Thus, the second *Winter* factor weighs heavily in favor of Afroghini.

**C. Balance of Equities and Public Interest**

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court acknowledges that the Attorney General has an undeniable interest in investigating the sale of nicotine products. However, equally undeniable, and perhaps most important, are the people's privacy interests enshrined in Article I, section 1 of the California Constitution. Cal. Const. art. I § 1 ("All people are by nature free and independent and have inalienable rights. Among these are . . . obtaining safety, happiness, and privacy."). What pushes this factor even further in Afroghini's favor is that Afroghini seeks only a temporary restraint on production so that the Court can adequately review, on a full record, the Attorney General's requests. The Court can conceive of no reason why the Attorney General's investigation cannot wait a short period, especially as the Deputy Attorney General assigned to the case is currently out of office, a fact that militates against any possible claim of urgency. (*See* DeClercq Decl. Ex. E ("AG Correspondence"), Dkt. No. 13-1.) Thus, the last two *Winter* factors weigh heavily in favor of Afroghini.

**D. Summary**

For the reasons discussed above, the Court finds that Afroghini has raised at least serious questions going to the merits of this case. Afroghini also demonstrates that the remaining three *Winter* factors tip sharply in its favor, and thus the Court finds that Afroghini has demonstrated it is entitled to the temporary restraining order it seeks. *All. for the Wild Rockies*, 632 F.3d at 1135. As the Attorney General does not demonstrate that a bond is necessary in this case, the Court waives Rule 65(c)'s bond requirement. *See Khoury v. Noem*, 832 F. Supp. 3d 1005, 1017–18 (C.D. Cal. 2026) (waiving bond requirement when the restrained party did "not present[] any evidence that would show a bond is necessary.").

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Afroghini's Ex Parte Application for a TRO. (Dkt. No. 7.) It is hereby **ORDERED** that:

- Shopify is **TEMPORARILY ENJOINED** from producing any document, data, or information responsive to the Challenged Requests, as defined above;
- To ensure the Attorney General has adequate opportunity to respond, and so that the Court can properly consider the papers, the Court finds good cause to **EXTEND** the Order beyond fourteen days, as authorized under Rule 65(b)(2);
- The Attorney General shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **OCTOBER 5, 2026**, as to why the Court should not issue a preliminary injunction in this case;
- Afroghini may file a reply by **OCTOBER 9, 2026**;
- The Court **SETS** a hearing on the preliminary injunction on **OCTOBER 16, 2026**, at 8:00 a.m., **IN PERSON**, at Felicitas and Gonzalo Mendez United States Courthouse, Los Angeles, **Courtroom 5D**; and
- Afroghini shall **IMMEDIATELY** serve this Order on all Defendants and file a proof of service.

**IT IS SO ORDERED.**

September 25, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**